## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| | : | |
| v. | : | Civil No. CCB-14-3025 |
| | : | |
| | : | |
| R&K TILE, INC., et al. | : | |
| | : | |

## MEMORANDUM

The United States sues R&K Tile, Inc. ("R&K"), a Maryland business, and its owners, Gerald Wilson and Kelee Wilson. The government's complaint seeks to reduce four separate tax assessments against R&K to judgment, as well as a permanent injunction commanding R&K and the Wilsons to timely pay R&K's future tax liabilities. The government now moves for a default judgment. No hearing is necessary to resolve that motion. *See* Local Rule 105.5 (D. Md. 2014). For the reasons explained below, the government's motion will be granted.

## BACKGROUND

According to the complaint, Gerald Wilson and Kelee Wilson own and operate R&K Tile, Inc. (*See* Compl. ¶¶ 2–3.) A delegate of the Secretary of the Treasury has issued four separate assessments to R&K for unpaid employment, unemployment, and income taxes. (*See id.* at ¶¶ 13, 18, 23, 28.) Notice and demand for payment on each assessment was sent to R&K Tile. (*See id.* at ¶¶ 14, 19, 24, 29.) It has not paid those assessments. (*See id.* at ¶¶ 16, 21, 26, 31.) The earliest of these assessments dates to the tax period ending December 31, 2006; the latest, to the tax period ending December 31, 2012. (*See id.* at ¶¶ 13, 28.) R&K's total unpaid liabilities amount to $91,182.80, exclusive of penalties and interest.

The declaration of an Internal Revenue Service officer appended to the motion for default judgment indicates that "R&K operated as a construction business from 2006 until sometime in 2013." (Mot. Default J. Ex. 1, Fawley Decl. ¶ 6, ECF No. 6.) Those operations continued notwithstanding the State of Maryland's revocation of R&K's corporate status in 2007 for failure to pay property taxes. (*Id.*) "Because of the nature of the defendants' construction business, R&K does not have any property of significant value against which the United States could levy." (*Id.* at ¶ 12.) The government's initially successful efforts to levy R&K's bank accounts have been stymied by R&K's apparent abandonment of those accounts. (*See id.* at ¶ 13.)

The United States filed this motion after the clerk entered default against the defendants. (*See* ECF No. 9.)

## ANALYSIS

"[D]efault judgment 'is appropriate when the adversary process has been halted because of an essentially unresponsive party.'" *Entrepreneur Media, Inc. v. JMD Entm't Grp., LLC*, 958 F. Supp. 2d 588, 593 (D. Md. 2013) (quoting *SEC v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005)). "Upon default, the well-pled allegations in a complaint as to liability are taken as true, although the allegations as to damages are not." *Lawbaugh*, 359 F. Supp. 2d at 422; *see also* Fed. R. Civ. P. 8(b)(6). But "'[t]he defendant is not held . . . to admit conclusions of law.' . . . The court must, therefore, determine whether the well-pleaded allegations in [the] complaint support the relief sought . . . ." *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001) (first omission in original) (quoting *Nishimatsu Constr. Co. v. Houston Nat'l Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975)).

By failing to answer the complaint, the defendants have admitted their failure to pay

known assessments equal to $91,182.80, exclusive of penalties and interest.  The declaration

appended to the motion supports the allegations that R&K failed to pay $91,182.80 worth of

assessments.  (*See* Fawley Decl. ¶ 4.)  The court may rely on that declaration to determine

damages.  *See, e.g.*, *Int'l Painters & Allied Trades Indus. Pension Fund v. Capital Restoration &*

*Painting Co.*, 919 F. Supp. 2d 680, 684 (D. Md. 2013).  It does so here, entering judgment

against R&K in that amount.

  The government also seeks an injunction, invoking this court's authority "to make and

issue in civil actions . . . orders of injunction . . . as may be necessary or appropriate for the

enforcement of the internal revenue laws."  *See* 26 U.S.C. § 7402(a).  Authority is split as to the

standard governing issuance of an injunction under that provision.  The Eleventh Circuit has held

that "the decision to issue an injunction under § 7402(a) is governed by the traditional factors

shaping the district court's use of the equitable remedy."  *United States v. Ernst & Whinney*, 735

F.2d 1296, 1301 (11th Cir. 1984).  That interpretation applies the more general rule of

construction that, "when Congress authorizes injunctive relief, it implicitly requires that the

traditional requirements for an injunction be met in addition to any elements explicitly specified

in the statute."  *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1098 (11th Cir. 2004) (noting,

however, that the Eleventh Circuit has frequently affirmed issuance of statutory injunctions

premised "on a variety of factors bearing little relationship to the traditional standard for an

injunction").  Most courts, however, appear to have concluded that, under § 7402(a), "the

government need only show that an injunction is appropriate for the enforcement of the internal

revenue laws, *without reference to the traditional equitable factors*."  *United States v. Thompson*,

395 F. Supp. 2d 941, 945 (E.D. Cal. 2005) (emphasis added); *see also United States v. ITS Fin.,*

*LLC*, 592 F. App'x 387, 400 (6th Cir. 2014).[1]  That alternative interpretation is premised on a very different rule of construction—namely, that the express standard established by a statutory grant of equitable jurisdiction trumps otherwise-applicable equitable criteria.  *See, e.g.*, *United States v. Gleason*, 432 F.3d 678, 682 (6th Cir. 2005) (discussing the standard for issuance of an injunction authorized by 26 U.S.C. § 2408, a separate section of the Internal Revenue Code). The Fourth Circuit has not weighed in on this question, and this court need not answer it here; issuance of an injunction is appropriate under both the standard described in the statute and traditional equitable principles.

On its face, 26 U.S.C. § 7402(a) authorizes issuance of an injunction when "necessary or appropriate."  Such an injunction "is appropriate if the defendant is reasonably likely to violate the federal tax laws again," which courts assess by evaluating the totality of the circumstances. *Thompson*, 395 F. Supp. 2d at 945–46.  Factors relevant to that analysis include:

> (1) the gravity of harm caused by the offense; (2) the extent of the defendant's participation, and her degree of scienter; (3) the isolated or recurrent nature of the infraction and the likelihood that the defendant's customary business activities might again involve her in such transaction; (4) the defendant's recognition of her own culpability; and (5) the sincerity of her assurances against future violations.

*Id.* at 946 (quoting *United States v. Harkins*, 355 F. Supp. 2d 1175, 1181 (D. Or. 2004)).

Here, R&K failed to pay over $90,000 worth of taxes over the course of nearly half a decade.  That conduct continued in the face of several federal assessments and the State of Maryland's revocation of R&K's corporate status for a parallel failure to pay property taxes. Indeed, R&K appears to have actively evaded enforcement, seemingly abandoning certain bank accounts to avoid government levies.  And notwithstanding the admission of culpability implied by R&K's failure to answer the government's complaint, neither it nor its operators appear to

---

[1] Unpublished opinions are cited for the soundness of their reasoning, not for any precedential value.

have expressly accepted responsibility for that conduct.

The only circumstance cutting against issuance of an injunction is the suggestion, contained in the declaration appended to this motion, that R&K's operations ceased "sometime in 2013." (Fawley Decl. ¶ 6.) But because R&K has not filed tax returns recently or in the past, and has not cooperated with government officials seeking tax-related information, the government's knowledge of R&K's continued operations is necessarily incomplete. (*See* Fawley Decl. ¶¶ 10–11, 14.) That observation, combined with the remaining circumstances of this case, suggests the strong possibility of continued concealment and non-payment of federal tax liabilities. Accordingly, issuance of an injunction here is "necessary or appropriate," as 26 U.S.C. § 7402(a) requires.

If traditional equitable principles supplement that statutory standard, then entry of an injunction would remain appropriate. Those "well-established principles of equity" condition issuance of a permanent injunction on the plaintiff's demonstration:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*Legend Night Club v. Miller*, 637 F.3d 291, 297 (4th Cir. 2011) (quoting *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388, 391 (2006)).

Usually, "harm is not 'irreparable' if it can be compensated by money damages during the normal course of litigation." *Person v. Mayor & City Council of Balt.*, 437 F. Supp. 2d 476, 479 (D. Md. 2006) (citing *Hughes Network Sys., Inc. v. InterDigital Commc'ns Corp.*, 17 F.3d 691, 694 (4th Cir. 1994)). Notwithstanding that general rule, "extraordinary circumstances may

give rise to . . . irreparable harm . . . ." *Hughes Network Sys.*, 17 F.3d at 694.[2]  In the context of a preliminary injunction, for example, such circumstances include the possibility that "[d]amages may be unobtainable from the defendant because he may become insolvent before a final judgment can be entered and collected." *Id.* (alteration in original) (quoting *Roland Mach. Co. v. Dresser Indus., Inc.*, 749 F.2d 380, 386 (7th Cir. 1984)).  The situation here is similar: R&K has long evaded the government's efforts to collect its unpaid liabilities, raising the specter that its "ever-increasing federal tax liabilities . . . may never be collected, therefore depriving the Government of its lawful tax revenues."  *United States v. Reliable Limousine Serv., LLC*, Civ. No. JFM-11-3383, 2012 WL 957620, at *2 (D. Md. Feb. 8, 2012).  Accordingly, the government has demonstrated irreparable harm and the inadequacy of awarding money damages in this case without an injunction.

As to the balance of the hardships, the injunction will order the defendants to comply with their existing legal obligations.  Such impositions are not cognizable.  Although the injunction will also include additional reporting obligations not applicable to most taxpayers, that burden is minimal compared to the possibility that the government will not collect tens of thousands of dollars in taxes.  The government would thus suffer a greater burden if the court refused to issue an injunction than the defendants will suffer from its issuance.

As to the fourth and final factor, the "broad public interest in maintaining a sound tax system is of . . . a high order . . . ." *United States v. Lee*, 455 U.S. 252, 260 (1982).  That interest includes the efficient collection of the revenue on which government operations rely, as well as fair competition between businesses vying for position in the market.

---

[2] *Hughes Network Systems* discussed only the irreparable harm standard applicable to issuance of a preliminary, not permanent, injunction.  *Id.*  The standard for both preliminary and permanent injunctions, however, is "similar."  *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014).

Accordingly, application of the traditional equitable standard, if warranted, confirms the propriety of issuing a permanent injunction here.[3]

**CONCLUSION**

For the reasons stated above, the court will enter default judgment against R&K Tile in the amount of $91,182.80, exclusive of penalties and interest, and issue an injunction ordering R&K, as well as the Wilsons, to timely comply with their tax liabilities and report that compliance to the government.

A separate order follows.


April 14, 2015                                    _____/S/_____
Date                                              Catherine C. Blake
                                                  United States District Judge

---

[3] The government also seeks to enjoin the Wilsons to timely file their individual tax returns with the government.  Because the Wilsons' individual tax liability is not at issue in this case, the court will not issue any order as to those liabilities.